STATE v. BROWN.

No. 4512.   Decided April 2, 1928.   (266 P. 716.)

*S. A. King,* of Salt Lake City, for appellant.

*Harvey H. Cluff,* Atty. Gen., and *L. A. Miner,* Asst. Atty. Gen., for the State.

CHERRY, J.

Defendant was convicted of persistent violation of the Prohibition Act (Comp. Laws 1917, §§ 3341-3381), and appeals. The information charged that, after a previous conviction of a similar offense, the defendant on January 30, 1926, unlawfully had in his possession a 10-gallon keg partially filled with moonshine whisky. Defendant at the time resided with his wife in a house situated at the mouth of a canyon in Iron county, a remote and isolated place about 3 miles from the main traveled road. On the day

in question, the county sheriff and his deputy went to the vicinity and from a distance saw a man leave the defendant's house, go in a southwesterly direction a short distance into the trees, and return to the house. The officers then went to the house and found the defendant and his wife in the house. With defendant's permission the officers searched the premises. They found several empty gallon containers, a gunny sack half full of charcoal, sections of an oil stove, and a small whisky glass containing a very small quantity of moonshine whisky. Defendant stated that no one else had been around his place for several days. The defendant owned an automobile which was standing about 40 yards southwesterly from the house, near a corral. Secreted in a tree about 50 or 60 yards southwesterly from the house and about 20 yards from the automobile, was found a 10-gallon keg containing moonshine whisky. There were fresh tracks or footprints apparently made by a man leading from the house to the automobile and from the automobile to the tree where the hidden keg was found. The witnesses also observed a ring or impression in the soil which had the appearance of having been made by a barrel or keg. One officer said the man he previously saw leave the house went in the direction of where the keg was later found. Leading from defendant's house in a southeasterly direction for about one-half mile was a trail over which wood had been dragged, and from the end of the trail footprints and horse tracks in the soil led to a shack or dugout in which was found a still for the manufacture of intoxicating liquor, consisting of a copper boiler, copper coils, an oil stove, barrels of corn and bran mash, hydrometer, containers, etc., including a 2-quart bottle partly filled with alcohol. There were no tracks around the still except those leading from the still to the defendant's house and from the house to the still. The footprints were all evidently made by one and the same man. The horse tracks were said, after a comparison, to correspond with the tracks made by defendant's horse. A half of a pair of men's trousers found

at the still was matched by the other half found at the dog-house near defendant's dwelling house. The oil stove at the still was in sections so it could be taken apart, and two sections found in defendant's house were similar to the sections found under the boiler. These and other circumstances tended to connect the defendant with the still. There was proof offered showing defendant's previous conviction of a violation of the Prohibition Act.

Defendant denied any knowledge or possession or connection with the still or whisky, and offered certain explanations concerning the articles found in his house. He was corroborated in part by the testimony of his wife.

Upon substantially the foregoing evidence the jury found the defendant guilty.

It is contended on this appeal that the conviction cannot stand because the evidence is insufficient to support the verdict, and because the court, over defendant's objection erroneously admitted evidence of the still, which it is claimed was irrelevant matter calculated to prejudice the defendant before the jury by connecting him with a separate and independent crime.

We are clearly of the opinion that the evidence was sufficient, as a matter of law, to warrant the jury in finding a verdict of guilty. It may be conceded that bare proof that hidden whisky was found on the premises of an accused person would not be sufficient in law to justify a verdict of unlawful possession. But here there are numerous additional circumstances tending to connect the defendant with the custody and possession of the keg of whisky found in the tree. The location of the premises, the tracks leading from the house to the still and to the place where the whisky was secreted, the absence of any indication that access to either place had been from any other direction or place, the finding of articles and materials in the house adapted for use in the operation of the

still, and the testimony which in effect was that the defendant was seen to go from the house to the tree where the whisky was hidden and return to the house, and that shortly thereafter a small quantity of moonshine whisky was discovered in a whisky glass in the house, are all relevant circumstances which, taken together, constitute rather satisfactory and convincing proof that the defendant had the possession of the keg of whisky found in the tree.

The second ground for reversal is equally untenable. It is a general rule that evidence which tends to prove another and a distinct offense committed by the accused is not admissible to prove the crime charged. But this rule does not go to the extent of excluding relevant evidence. When evidence is relevant in itself, it is not rendered inadmissible because it proves or tends to prove another and distinct crime. 16 C. J. 588; Underhill Crim. Ev. (2d Ed.) pp. 163, 164. We think it plain that evidence that the defendant had a connection with a nearby still where moonshine whisky could be made and obtained has a relevancy to the question of defendant's possession of the keg of whisky found hidden in the tree, because it shows the ability, means and opportunity for coming into possession of it. It is more likely that a person going to and from an ilicit still would have moonshine whisky in his possession than one who had not done so. The evidence complained of was admissible because it was relevant to the issue of defendant's guilt of the offense charged. Evidence of this character is uniformly admitted in cases of this kind. *Thompson* v. *State,* 99 Tex. Cr. R. 470, 269 S. W. 1048; *Kendall* v. *Com.,* 202 Ky. 169, 259 S. W. 71; *Dameron* v. *State,* 97 Tex. Cr. R. 172, 260 S. W. 855; *Kelly* v. *State,* 95 Tex. Cr. R. 138, 252 S. W. 1065; *State* v. *Work,* 47 S. D. 649, 201 N. W. 553; *State* v. *Simons,* 178 N. C. 679, 100 S. E. 239; *Com.* v. *Abel,* 84 Pa. Super. Ct. 102; *People* v. *Petrovich,* 67 Cal. App. 405, 227 P. 978; *People* v. *Malone,* 68 Cal. App. 615, 229 P. 1000; *Keith* v. *U. S.* (C. C. A.) 11 F. (2d) 933.

The judgment is affirmed.

HANSEN, J. and BARKER, District Judge, concur.

GIDEON, J., did not participate herein.

THURMAN, C. J. I dissent from the opinion of the majority, not because the evidence was insufficient to sustain the verdict, but because evidence was admitted, over defendant's objection, which, in my opinion, was irrelevant and inadmissible. I object to that portion of the evidence, not only because it was irrevelant for reasons I will state, but because it tended to prove another offense than that charged in the information, and thereby tended to prejudice the defendant and prevent him having a fair trial. The rule against admitting such evidence should be rigidly enforced by the courts in order to give a defendant in a criminal case a fair and impartial trial, as contemplated by the Constitution and laws of the state.

The operation of a still and the manufacture of intoxicating liquor is a distinct offense from that of having such liquor in one's possession. The offense charged against the defendant is his having in his possession a 10-gallon keg partially filled with moonshine whisky. No suggestion is made as to the operation of a still and the manufacture of whisky or other intoxicating liquor. The defendant pleaded not guilty as to the offense charged, and went to trial. While it would be going too far to admit that the evidence was conclusive against him, I will admit it was sufficient to justify the jury in finding him guilty. The majority opinion fairly reflects the evidence in that respect. Some one was seen by the officers going from the house in the direction of the trees and returning. The officers investigated and found fresh tracks, apparently made that morning, leading from the house to the trees and returning to the house, and upon inquiry of the defendant learned that no one but he and his wife had been there for several days. Among the trees to which the tracks led, the officers found a 10-gallon keg **partially filled** with moonshine whisky and also found a

small quantity of whisky in a glass in his home, and other inculpatory evidence. This evidence alone without a satisfactory explanation was sufficient to justify the verdict of the jury. But, after such evidence was admitted, the state, over defendant's objection, was permitted to introduce evidence to show that a still was found about a half mile away from the premises of defendant, and that too, as I contend, without any sufficient connection to show that the evidence was relevant or material to the offense charged in the information. It tended to show another and distinct offense, as above stated, one not shown to be connected with the offense charged. In such case the separate and distinct offense should have been established by the evidence beyond a reasonable doubt. In Underhill on Evidence, p. 160, it is said:

"The connection must appear from the evidence. Whether any connection exists is a judicial question. If the court does not clearly perceive it, the accused should be given the benefit of the doubt and the evidence rejected. The minds of the jurors must not be poisoned and prejudiced against the prisoner by receiving evidence of this description unless the case clearly comes under this exception."

A fortiori, such evidence ought not to be admitted where it is entirely circumstantial, for in that case all the rules of circumstantial evidence intended to safeguard a defendant charged with crime should be enforced by the court.

Let us now briefly review the facts material to the question here involved. It appears that the defendant's home, which he had rented from some landlord, was situated about 3 miles from the highway, and the road from the highway appeared to have been extensively traveled by automobiles. There was a drag road, for dragging wood, leading from defendant's house up to a point a few hundred yards from the still. From this drag road the tracks of a horse were followed for a distance of about 200 yards, and from that point a man's tracks led to the still. The front feet of the horse were shod with No. 1 shoes. These were compared

with tracks made by defendant's horse, and were said to resemble them. It must be true that many horses wear No. 1 shoes. For some reason the tracks of the hind feet of the horse, which were unshod and would have shown the natural shape of the hoof, were not compared. The man's tracks were neither measured nor compared, notwithstanding the fact that fresh tracks supposed to have been made by defendant that very morning were found on and about defendant's premises. While it is stated that all the tracks leading from the still were down towards the house, such tracks were neither measured nor compared with the tracks leading from the house to the keg. As before stated, the evidence shows that from the main highway up to defendant's residence the road was extensively traveled by automobiles. Whether the tracks between the house and the still were made by these people who came up in automobiles, or by the defendant, or some one else, does not appear. The probabilities in that regard appear to be about equal. But there is another feature of the evidence which tends to render it improbable that the moonshine whisky found in the keg came from the still. The state's witnesses testified that defendant's car was about 40 yards from the house and about 20 yards from the keg. There were tracks leading back and forth from the car to the keg. These tracks certainly did not indicate that defendant had brought the keg of whisky from the still in his car, because there were no tracks of an automobile in that direction from the house. It does not even appear that an automobile could have been driven above the house. If it were contended here that the keg was brought from some point on the highway up to defendant's house, there would be circumstances from which such fact might at least be remotely inferred; but, to undertake to connect the keg of moonshine whisky with the still, it is necessary to fly in the face of all the proven circumstances. If we consider the circumstances testified to by the state's witnesses, it is far more probable that, if the defendant is guilty as charged in the information,

he brought the keg from some place on or near the highway in his car, drove the car up to where the witnesses found it, and carried the keg from the car to where it was found, as indicated by the tracks. The circumstances relied on are entirely consistent with this theory of the case and inconsistent with the theory that defendant manufactured the moonshine found in the keg. If the circumstances, measured by the rules of circumstantial evidence, are not sufficient to justify an inference that defendant manufactured the liquor found in the keg, then there is no legal connection whatever between the still and the crime charged in the information. Both defendant and his wife denied any ownership or knowledge of the still. They testified that defendant was only in possession of the residence and the corral. Their landlord testified that these were all he rented to the defendant. In fact it does not even appear that his landlord owned the premises where the still was found, which was a half mile from defendant's house. To overcome this direct and positive testimony, the circumstances relied on to prove defendant's connection with the still ought to be wellnigh conclusive. It is purely a case of circumstantial evidence, and, unless the circumstances all point to the defendant's guilt and are inconsistent with his innocence, the evidence ought not to have been admitted. The fact that a part of a pair of overalls found at the still is said to have matched another part found on the doghouse is of little or no significance. Both defendant and his wife, who had occupied the premises for only a few months, testified that the half pair of overalls were on the doghouse when they rented the premises. Such testimony was in no manner rebutted, and was not an unreasonable explanation.

The majority opinion cites the following cases in support of the holding that the evidence relating to the still was relevant: *Thompson* v. *State,* 99 Tex. Cr. R. 470, 269 S. W. 1048; *Kendall* v. *Com.,* 202 Ky. 169, 259 S. W. 71; *Dameron* v. *State,* 97 Tex. Cr. R. 172, 260 S. W. 855; *Kelly* v. *State,* 95 Tex. Cr. R. 138, 252 S. W. 1066; *State* v. *Work,*

47 S. D. 649, 201 N. W. 553; *State* v. *Simons*, 178 N. C. 679, 100 S. E. 239; *Com.* v. *Abel*, 84 Pa. Super. Ct. 102; *People* v. *Petrovich*, 67 Cal. App. 405, 227 P. 978; *People* v. *Malone*, 68 Cal. App. 615, 229 P. 1000; *Keith* v. *U. S.* (C. C. A.) 11 F. (2d) 933. The cases are not reviewed or commented upon, nor is it necessary that I should do so. It is sufficient to say there is a vital distinction between every one of the cases relied on and the case at bar, in that in every one of these cases the evidence in question related to inculpatory things found on the premises of the defendant or things he was conclusively shown to have been connected with. The very things that were necessary to make the evidence relevant were shown to exist in the cases cited.

In what has been said, I have confined my remarks almost entirely to the proposition that the evidence objected to was irrelevant and therefore inadmissible. It is important, however, to consider the further fact that the evidence here in question tended to prove a crime other than that charged in the information. As to such evidence Underhill, Criminal Evidence (3d Ed.) § 150, says:

"Generally it is error to admit evidence independent of the crime charged of other offenses * * * such as in a charge of * * * violating liquor laws," etc.

The author then states many exceptions to the general rule which arise from the necessity of the case, such as where several crimes are so intermixed and blended that proof of one cannot be given without showing the other; where proof of the other crime is offered for the purpose of showing guilty knowledge; where as here claimed the evidence is relevant to the crime charged, etc. Chapter 15 of the work referred to is devoted exclusively to this subject, and discusses at length, the exceptions to the general rule.

I am clearly convinced after a reasonably careful examination that the evidence here in question was not admissible under any of the exceptions enumerated.

For the reasons stated, I am of opinion the evidence objected to was inadmissible, and that the court erred in overruling defendant's objection thereto.

STRAUP, J. (dissenting). I concur in the dissent of the Chief Justice. It of course is conceded that operating a still and manufacturing intoxicating or distilled liquor, and unlawfully possessing intoxicating liquor, are separate and not included offenses. It also is conceded that the general rule is that evidence of a separate offense or transaction is not admissible against the accused on trial for another specific offense or transaction. The reason for the rule is that such evidence compels the accused to meet charges of which the indictment or information gives him no notice, raises a variety of issues and confuses them, diverts the attention of the jury from the particular charge before it, tends to create a prejudice in the minds of the jury against the accused and to induce a more ready belief that he committed the charged offense. There are well-recognized exceptions to the general rule. They are stated in *State* v. *Bowen*, 43 Utah 111, 134 P. 623, and again in *State* v. *De Weese*, 51 Utah 515, 172 P. 290. They are the subject of elaborate notes in 62 L. R. A. 193, referred to in both of the above-cited cases. To bring the evidence objected to within any of the exceptions stated in such prior cases, it must fall within the exceptions that, where the alleged offense and another claimed offense or offenses constitute parts of one transaction or of a general scheme or plan, and are so related or connected that a complete account of the entire transaction of the one cannot fairly be given without also showing the other, or where the proof of the one involves proving the other. Measured by that standard, I think the evidence objected to was improperly received. A case may readily be perceived where one may unlawfully operate or possess a still and at the same time and place unlawfully possess whisky or other distilled products, and where evidence of the possession of the one, or of the en-

tire transaction with respect thereto, cannot fairly or completely be given without also showing the other, or where the proof of the one involves also proving the other. But here it was not shown that the existence or possession or operation of the still was on the accused's premises, or that he exercised any control over it or had anything to do with it. Nor was there any evidence to show that the keg of whisky in the tree in the field near the accused's dwelling, but not on his premises, was obtained by the accused, or that it came from the still half a mile or more away partly up the mountain on premises not even claimed to have been owned, possessed, occupied, or controlled by the accused. There thus was no connection shown between the existence or operation of the still and the keg of whisky in the tree claimed to have been in the possession of the accused. Such facts in no sense where shown to have been parts of one transaction, or that the one bore any relation to the other; much less may it be said that to prove the possession of the keg of whisky in the accused in any degree involved also proving the existence or operation of the still, or that a complete account of the transaction of the one could not fairly and completely have been given without also showing the other. Whatever competent or legally relevant evidence the state may have had as to the accused's possession of the keg of whisky well and fully could have been adduced without proof of, or any reference whatever to, the still. Though it be assumed that, upon the state's claim and charge of the accused's possession of the whisky, and on his denial thereof, it would have been relevant on behalf of the state to show where or from whom the accused obtained the whisky, or who delivered it to him, on the theory that such proof would have legal relevancy bearing on the fact or question of the accused's possession, yet that is not what the state did. At most it only attempted to show that the accused *could* or *might* have obtained the whisky at or from the still, and that, too, on mere surmise or conjecture wholly without proof that he possessed or operated the still,

or on mere surmise or conjecture that he might or could have obtained it from another possessing or operating the still. With presumed due diligence on the part of public officials of Iron county and of the district, the state no doubt could have shown many places where or circumstances under which the accused *could* or *might* have obtained the whisky. To show where the accused *might* or *could* have obtained it, and where he in fact did obtain it, are two entirely different propositions. That proof of the former has neither logical nor legal relevancy to prove the latter is plain.

That horse tracks led from the trail towards the still, and that the tracks *could* have been made by shoes on a horse owned by the accused, does not justify the inference that the tracks were made by the accused's horse, nor, more especially, that the horse was there driven or ridden by the accused. That a part of a pair of overalls was found about the still and the other part tacked up on a doghouse near the accused's dwelling, without more, does not justify the inference that the overalls belonged to the accused, or that he took or left the part at or about the still found there. That parts of an oil stove found in the dwelling of the accused were similar to parts of an oil stove found under the boiler of the still does not justify the inference that the oil stove or the still, or both, belonged to the accused, or that they were placed there by him. Nor do such proven facts, singly or collectively, tend to show that the still belonged to or was possessed or operated by the accused. Here we must not be unmindful of the general rule in criminal cases that it is not enough to prove facts from which an adverse inference may be deduced. The deduced inference must be not only adverse, but must be wholly inconsistent with innocence. If on the proven facts two inferences may be deduced, one inconsistent, and the other equally consistent, with innocence, then the proven circumstances are of no probative value.

Though it be assumed that such proven facts tend to show that the accused had some connection with, or was about the still, yet the pertinent inquiry is: Were such proven facts or circumstances, and the fact that the keg of whisky was found in a tree in a field near the accused's dwelling, but not on his premises, parts of one transaction or so closely connected with or related to each other that a complete account of the transaction of the accused's possession of the keg of whisky could not have been shown without also permitting the state to prove the facts or circumstances it was permitted to prove with respect to the still? I think the two were entire, separate, and distinct transactions, and the one in no sense dependent upon the other.

In the prevailing opinion, the rule apparently is laid down that evidence of separate offenses may be given to show ability, means, and opportunity of the accused to commit, or as bearing on the probability of his having committed, the charged offense. I think it more wholesome to stay within the well-recognized exceptions to the general rule, and not carve out of it additional, or create new, exceptions until the general rule loses its character as such and itself becomes a mere exception. I think what is decided in the prevailing opinion is a departure from the rule announced in *State* v. *Bowen* and *State* v. *De Weese,* supra. By the prevailing opinion the view seems to be entertained that all evidence which logically is relevant is also legally relevant. That, in some instances may be true, in others not, and in many the subject of relevancy of testimony has become matter of precedent and authority. The fact that evidence may be logically relevant does not insure its admissibility. It must also be legally relevant. Thus when the profession speaks of relevancy of evidence, legal and not mere logical relevancy is meant. 2 Jones Com. on Ev. (2d Ed.) § 592. It is apparent to me that the objectional evidence was offered and permitted, not to show a part of one and a connected transaction, but on mere surmises and suspicion to induce the jury to believe or conjecture that the accused

possessed or operated a still, which had no connection with his alleged possession of the liquor. To a jury—to a layman—evidence that the accused, on a charge of homicide or larceny or other offense, had prior thereto committed other homicides, larcenies, or other offenses, though entirely separate and distinct transactions, might naturally be regarded by them as logically relevant and as tending to show a probability, or at least more readily to induce a belief thereof, that the accused committed the charged offense, but for which evidence a jury might not be persuaded of the accused's guilt of the charged offense. Yet the general rule is that such evidence, for the reasons already stated, has no legal relevancy and must be excluded. To now lay down a doctrine that such evidence may be given to show ability, means, or opportunity to commit the charged offense or as tending to show a probability or a likelihood that the accused might have committed it, is still worse and still more discordant with the general rule and not within the exceptions.